**THE HONORABLE LEON A. KENDALL, Plaintiff**

**v.**

**THE DAILY NEWS PUBLISHING CO. d/b/a THE VIRGIN ISLANDS
DAILY NEWS, JOY BLACKBURN and JOSEPH TSIDULKO,
Defendants**

Case No. ST-07-CV-517

Superior Court of the Virgin Islands

Division of St. Thomas

May 27, 2010

252

253

254

GORDON RHEA, ESQ., Richardson, Patrick, Westbrook & Brickman, Mt. Pleasant, SC; HOWARD M. COOPER, ESQ., JULIE E. GREEN, ESQ., Todd & Weld, L.L.P., Boston, MA, *For the Plaintiff.*

KEVIN A. RAMES, ESQ., Law Offices of K.A. Ramesd, P.C., St. Croix, USVI; MICHAEL D. SULLIVAN, ESQ., MICHAEL BERRY, ESQ., Levine Sullivan Koch & Schulz, L.L.P., Washington, DC, *For the Defendants.*

ROSS, *Judge*

## MEMORANDUM OPINION

(May 27, 2010)

**THIS MATTER** is before the Court on Defendants Daily News Publishing Co.'s d/b/a The Virgin Islands Daily News (hereafter

"Defendant" or "The Daily News"), Joy Blackburn's (hereafter "Defendant" or "Ms. Blackburn") and Joseph Tsidulko's (hereafter "Defendant" or "Mr. Tsidulko") (hereafter collectively "Defendants") motion for judgment as a matter of law pursuant to Rule 50(a) and (b) of the Federal Rules of Civil Procedure[1]. The Honorable Leon A. Kendall (hereafter "Plaintiff" or "Judge Kendall") claimed that Defendants libeled him in a series of newspaper articles and an editorial published in The Virgin Islands Daily News between April 27, 2004 and February 2009 and did so with actual malice. Defendants assert that based on the evidence presented at trial a "reasonable jury" would not have a legally sufficient evidentiary basis to find for Plaintiff under controlling law and thus judgment should be entered against Plaintiff as a matter of law. For the reasons that follow, the Court will grant Defendants' motion pursuant to Rule 50(b)(3) and direct the entry of judgment as a matter of law in favor of Defendants[2] and against Judge Kendall.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff Judge Kendall commenced this action by tiling a complaint, amended on April 28, 2009, setting forth nine counts for defamation. Five counts arise from articles published in The Daily News mentioning Judge Kendall's bail decisions in the Carty case (Counts I and VII), the Castillo case (Counts II and VI), and the Williams case (Count V). Another count, Count III, is based on the editorial calling on Judge Kendall to resign. Count IV claims nine other articles are defamatory, while Count IX alleges The Daily News "used the occasion" of the judicial misconduct complaints filed against Judge Kendall "to repeat and republish their defamatory reporting." And, in Count VIII, Plaintiff claims Defendants defamed him by a report on his impending retirement.

At trial, Plaintiff Judge Kendall presented evidence showing that The Daily News published a series of articles concerning him authored by Mr. Tsidulko and Ms. Blackburn. He asserted that the articles are replete with inflammatory and misleading headlines, known factual errors, outright fabrications, and a demonstrable disregard for information which

---

[1] Federal Rules of Civil Procedure are applicable to proceedings in the Superior Court pursuant to SUPER. CT. RULE 7.

[2] At trial the jury entered a verdict in favor of Mr. Tsidulko, and so the issues in the Rule 50 motion for judgment as a matter of law relating to him were rendered moot.

the Defendants knowingly sought to avoid in pursuit of their agenda to attack him and destroy his reputation.

In opposition, Defendants presented evidence at trial asserting that Plaintiff Judge Kendall had filed suit against Defendants for reporting on decisions he rendered as a judge and the public controversy that followed some of those decisions. They asserted that the publications at issue represent the kind of routine reporting and commentary about the criminal justice system that newspapers throughout the United States publish every day. Moreover, they argued that The Daily News articles provide accurate account of court proceedings over which Judge Kendall presided, the decisions he rendered, and the tragic results flowing from some of those decision.

At the close of Plaintiff's case-in-chief at trial on March 8, 2010, the Defendants moved for a directed verdict, pursuant to Rule 50(a). They subsequently renewed their motion pursuant to 50(b) at the close of all of the evidence on March 11, 2010. Defendants argued that the trial record establishes that The Daily News and Ms. Blackburn did not publish any materially false statement, did not publish any statement knowing that it was false or with a high degree of awareness of its probable falsity, and, in many instances, simply published constitutionally protected opinions about a public official's performance of his public duties. The Court deferred ruling on the motion until now.

## STANDARD FOR DIRECTED VERDICT

A trial court in entering a judgment as a matter of law under Rule 50 removes from the jury's consideration cases or issues, "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000) (citing 9A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2521, p. 240 (2d ed. 1995)); *see also Brady v. Southern R. Co.*, 320 U.S. 476, 479-480, 64 S. Ct. 232, 88 L. Ed. 239 (1943) (holding that a trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict) (internal citations omitted).

"The question is whether the evidence and all fair inferences that can be drawn therefrom could lead a 'reasonable jury' to only one conclusion." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d. Cir. 2009). "In determining whether to resolve an issue as a matter of law, the trial court must consider all of the evidence, accept the nonmoving party's

evidence as true, and draw all *reasonable* inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150-151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (emphasis added).

■ In considering the evidence of this case, however, this Court is likewise intrinsically bound — as a matter of constitutional law — to do so "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may include vehement, caustic, and sometimes unpleasantly sharp attacks, which must be protected if the guarantees of the First and Fourteenth Amendments are to prevail." *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 277, 91 S. Ct. 621, 628, 28 L. Ed. 2d 35 (1971). (Citing from *New York Times,* 376 U.S. 254, 270, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686 (1964).

■ Thus, as the Court reviews the evidence, the underpinning question before it is "whether this rule of liability [applicable to libelous statements], as applied to this action brought by [Judge Kendall] — as a public official — against critics of his official conduct, abridges the freedom of speech and of the press that is guaranteed by the First Amendment." *New York Times,* 376 U.S. at 268, 84 S. Ct. at 719. "This Court's duty, [in so determining], is not limited to the elaboration of constitutional principles: it must also review the evidence to make certain that those principles have been constitutionally applied. Particularly since the question is one of alleged trespass across the line between speech unconditionally guaranteed and speech which may legitimately be regulated. *Speiser v. Randall,* 357 U.S. 513, 525, 78 S. Ct. 1332, 1341, 2 L. Ed. 2d 1460. In cases where that line must be drawn, the rule is that the courts must '[examine for itself] the statements in issue and the circumstances under which they were made to see whether they are of a character which the principles of the First Amendment, [as made applicable to the Virgin Islands by the Revised Organic Act], protect.' *Pennekamp v. Florida,* 328 U.S. 331, 335, 66 S. Ct. 1029, 1031, 90 L. Ed. 1295; *see also One, Inc., v. Olesen,* 355 U.S. 371, 78 S. Ct. 364, 2 L. Ed. 2d 352; *Sunshine Book Co. v. Summerfield,* 355 U.S. 372, 78 S. Ct. 365, 2 L. Ed. 2d 352. The Court must, following such precedent, 'make an independent examination of the whole record,' *Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S. Ct. 680, 683, 9 L. Ed. 2d 697, so as to assure itself that a judgment for Plaintiff does not constitute a forbidden

intrusion on the field of free expression." *New York Times*, 376 U.S. at 285, 84 S. Ct. at 728-729.

## II. ANALYSIS

Central to Judge Kendall's factual allegations and the legal issues therein is the question — whether Defendants accurately reported on Judge Kendall's bail decisions in the context of the ongoing public controversy over the law of the Virgin Islands governing bail in the Superior Court. Thus, a brief review of the bail law provides essential insight.

According to Judge Kendall's testimony (which tracked the allegations of his complaint), in the criminal division of the Superior Court of the Virgin Islands, criminal defendant's bail and pre-trial detention are governed by statute. Am. Compl. ¶ 8. Judge Kendall opines that "the purpose of bail is never to punish the defendant before he/she is tried and convicted. Rather, its purpose is merely to ensure the defendant's appearance at trial." *Id.* Judge Kendall agrees that in setting bail, Judges of the Superior Court are mandated by Rule 141(b) of the Court's Rules to apply the appropriate provisions of the United States Bail Reform Act, . 18 U.S.C. §§ 3141-3156 (1985). Notably, Judge Kendall opines that "absent a motion [pursuant to 5 V.I.C. § 3504[a]] from the prosecution asking the presiding Judge to consider a defendant's pre-trial detention based upon certain conditions set forth in the statute including whether the defendant presents a danger to the community such that no one condition or combination of conditions will reasonably assure the safety of the community or appearance of the defendant, the Judge cannot consider [those] statutory procedures and factors." *Id.*

In opposition, the Defendants point out that § 3142(c) of the Federal Bail Reform Act expressly instructs that if the judge determines that release on personal recognizance or an unsecured bond will not assure a defendant's appearance or will endanger the community, the judge must impose additional conditions, including requiring the defendant to execute a bail bond or an agreement to forfeit property if he fails to appear. In further support, the Defendants also cite to *Tobal v. People*, 51 V.I. 147, 161 (V.I. 2009), wherein the Supreme Court of the Virgin Islands held:

Specifically, consistent with our holdings herein and in *Browne*[3], as well as the law in the overwhelming majority of jurisdictions, we reiterate that **a judge may not deny bail completely upon finding that the defendant presents a flight risk or a danger to the community.** *Rather,* **when such circumstances are present,** the **judge** *may take* those *facts into consideration* when determining **the** *sufficiency* **of the sureties in setting bail and the conditions to be imposed in connection with the bail as established.**

(Emphasis added.)

▮ The V.I. Supreme Court's holding in *Tobal* would necessarily support the proposition, contrary to Judge Kendall's position, that the following factors enumerated in title 5, section 3504a would be relevant for a judge to consider for purposes of determining the sufficiency of the sureties in setting bail, and the conditions to be imposed in connection with the bail:

> the person's pattern of behavior consisting of his past and present conduct, the nature and circumstances of the offense charged, the weight of the evidence presented, his family ties, employment, financial resources, character and mental condition, length of residence in the community, record of convictions, and any record of appearance at court proceedings, flight to avoid prosecution or failure to appear at court proceedings, there is no one condition or combination of conditions which will reasonably assure the safety of the community or, particularly in the case of a person charged with drug trafficking, that the person charged will appear for trial.

*Tobal*, at 154, 5 V.I.C. § 3504a(a)(1).

▮▮ Having succinctly discussed the provisions of the Virgin Islands law on bail central to Judge Kendall's defamation claims against Defendants, the Court will proceed with setting forth the applicable law of libel. Virgin Islands law on libel incorporates the principles of the Restatement (Second) of Torts — absent contrary local law or statute. *See* 1 V.I.C. § 4. According to the RESTATEMENT (SECOND) OF TORTS § 558 (1977):

---

[3] *Browne v. People*, 50 V.I. 241 (V.I. 2008).

*To create liability for defamation there must be*: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

(emphasis added).

It bears noting that although a defamation suit has profound First Amendment implications, it is fundamentally a [local] cause of action. *See McDowell v. Paiewonsky*, 769 F.2d 942, 945 (3d Cir. 1985) (citing from *Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1077 (3d Cir. 1985)). Accordingly, adjudicating such claims requires inquiries under both [local] and federal law. *Id.* In the first instance, the Court must determine whether the defendant has injured the plaintiffs reputation under the applicable local law, and if so, then the Court must ascertain whether the First Amendment nevertheless prohibits the imposition of liability. *Id.* (citing from *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 270 (3d Cir. 1980)).

■ As a matter of local law, in order for Plaintiff to succeed on his defamation claims against Defendants, Plaintiff has the preliminary burden of establishing by a preponderance of the evidence false and defamatory statements about him and that the publications were not privileged. *See VECC, Inc. v. Bank of Nova Scotia*, 296 F. Supp. 2d 617, 622 (D.V.I. 2003).

■ As a public figure, however, Plaintiff Judge Kendall, may not recover damages under local law for a defamatory falsehood [relating to his official conduct] without also presenting the requisite constitutional standard of clear and convincing proof that the false "statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-283, 84 S. Ct. 710, 725-728, 11 L. Ed. 2d 686 (1964) (holding that the Constitution delimits a State's power to award damages for libel in actions brought by public officials against critics of their official conduct.)

■ Under the Restatement (Second) of Torts, to be actionable a communication must be a misstatement of fact capable of defamatory

meaning that is of and concerning the plaintiff. At the outset is important to point out that the falsity and defamatory meaning of a statement both present threshold questions of law for the Court to determine. RESTATEMENT (SECOND) OF TORTS § 614; *see also Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 971 (3d Cir. 1985) ("court's function is to decide if a communication is capable of a defamatory meaning"); *id.* at 972 ("court may determine that allegedly defamatory statements are true if a reasonable jury could come to only one conclusion."). When considering a publication's alleged meaning, the Court "must evaluate 'the effect [the publication] is fairly calculated to produce, the impression it would naturally engender, in the minds of average persons amount whom it is intended to circulate.' " *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001). The Court is not bound by the plaintiff's interpretation and must reject the plaintiff's interpretation when it is "unreasonable," *Redco Corp.*, 758 F.2d at 972, or "misconstrue[s]" the publication. *Jenkins v. KYW*, 829 F.2d 403, 408 (3d Cir. 1987). "[A] court should not, however, take unto itself the task of deciding the most natural meaning of words, so long as another interpretation, under all the circumstances, is within the bounds of reason." *Skeoch v. Ottley*, 6 V.I. 241, 377 F.2d 804, 809 (3d Cir. 1967) (internal quotations and citations omitted).

██ ██ Further, whether a statement can reasonably be interpreted to state actual facts about the plaintiff and whether the statement is protected opinion are also preliminary questions of law for the Court to decide. *See* RESTATEMENT § 566 cmt. c; *see also* 1 Robert D. Sack, SACK ON DEFAMATION § 4.3.7, at 4-61 to -62 & n. 226 (2008) ("The vast majority of courts, and all of the federal circuits, agree that whether a statement is fact or opinion is a matter of law for the court to decide."). In *Gertz v. Welch*, 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), the Supreme Court of the United States has long since instructed:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

*Id.* at 339-40, 94 S. Ct. at 3006-07.

██ The Third Circuit in *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985) further elucidates:

263

Although there may be no such thing as a false opinion, an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion. In such circumstances, if the underlying facts are false, the Constitution does not protect the opinion. See RESTATEMENT (SECOND) OF TORTS § 566.

 Most critically, in reviewing the evidence it is imperative to recall that under the law of libel, a report of an official proceeding or record, including court proceedings and court records, is privileged, and therefore cannot be the basis for a judgment against Defendants if the account presents a fair and accurate summary of the proceedings or the contents of the official record. *Medico v. Time, Inc.*, 643 F2d. 134, 137 (3d Cir. 1981). The "fair report privilege" is provided as a means to protect the public's interest in having information made available to it about what occurs in government proceedings, including judicial proceedings, because access to such information is considered central to the public's ability to hold their government officials accountable. RESTATEMENT § 611 cmt. a. It is not necessary that the report be exact in every immaterial detail or that it conforms to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings. RESTATEMENT § 611 cmt. f. If the report is reasonably fair and accurate, the defamation claim tails as a matter of law. *Schiavone Constr. Co. v. Time, Inc.*, 735 F.2d 94, 97 (3d Cir. 1984). "A rule compelling the critic of official conduct to guarantee the truth of all his factual assertions and to do so, on the pain of libel judgments virtually unlimited in amount leads to a comparable 'self-censorship.' " *New York Times*, 376 U.S. at 279, 84 S. Ct. at 725. "Cases which impose liability for erroneous reports of the political conduct of officials relied the obsolete doctrine that the governed must not criticize their governors. * * * The interest of the public here outweighs the interest of [Plaintiff]* or any other individual. The protection of the public requires not merely discussion, but information." *New York Times*, 376 U.S. at 272, 84 S. Ct. at 721 (internal citation omitted).

■ Most significantly, this Court is reminded that in determining whether the evidence adduced at trial is sufficient to support a finding of "actual malice", that in *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984), the United States Supreme Court plainly instructs that judges in [these] cases have a constitutional duty to "exercise independent judgment and determine whether the record establishes actual malice with convincing clarity." *Id.* at 514, 104 S. Ct. at 1967.

■ The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is also a question of law. *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. at 510-511, 104 S. Ct. at 1965. "This rule is not simply premised on common-law tradition, but on the unique character of the interest protected by the actual malice standard. Our profound national commitment to the free exchange of ideas, as enshrined in the First Amendment, demands that the law of libel carve out an area of 'breathing space' so that protected speech is not discouraged." *Gertz*, 418 U.S., at 342, 94 S. Ct. at 3008 (quoting *NAACP v. Button*, 371 U.S. 415, 433, 83 S. Ct. 328, 338, 9 L. Ed. 2d 405 (1963)); *New York Times Co.*, 376 U.S., at 272, 84 S. Ct. at 721-722 (same). The meaning of terms such as "actual malice" and more particularly, "reckless disregard" however, is not readily captured in "one infallible definition." *St. Amant v. Thompson*, 390 U.S., at 730, 88 S. Ct. at 1325. Rather, only through the course of case-by-case adjudication can we give content to these otherwise elusive constitutional standards. *Base, supra*, 466 U.S., at 503, 104 S. Ct. at 1960. Moreover, such elucidation is particularly important in the area of free speech for precisely the same reason that the actual malice standard is itself necessary. Uncertainty as to the scope of the constitutional protection can only dissuade protected speech — the more elusive the standard, the less protection it affords. Most fundamentally, the rule is premised on the recognition that "[j]udges, as expositors of the Constitution." have a duty to "independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.' " *Bose, supra*, at 511, 104 S. Ct. at 1965.

Having set forth the applicable law, at this juncture, it is imperative for this Court to review the evidence adduced at trial within relevant context and in accordance with controlling law determine whether Plaintiff Judge

Kendall indeed met his burden of proof with respect to the individual claims asserted in his complaint against the Defendants individually.

## A. Defendant Joy Blackburn

### 1. Daniel Castillo Statements

Plaintiff sues Ms. Blackburn over seven articles she authored mentioning his decision to release Daniel Castillo on personal recognizance and using the phrase "history of violence" to describe Castillo's criminal history. *See*, Pl, Exs. 7, 8, 11, 13, 15, 16, & 17.

In Count VI of Plaintiff's complaint, he alleges that the Daily News published false, misleading and defamatory stories about him in an article authored by Joy Blackburn on April 14, 2007 entitled "Police say Castillo confessed to killing Laquina" and an article authored by Joseph Tsidulko dated April 20, 2007 entitled "Castillo pleads not guilty to the murder of Laquina Hennis." Plaintiff also asserts therein that the stories are defamatory in that they repeat "the falsehood that Judge Kendall had released Defendant Castillo despite a 'history of violence' suggesting and implying that Defendant Castillo had a long criminal record and that Judge Kendall had improperly ignored it in setting bail in Defendant Castillo's misdemeanor domestic assault case, when in fact Defendant Castillo did not have a history of violence at the time he appeared before Judge Kendall." (Amended Complaint at 15-16).

In Count II of Plaintiff's complaint, he claims that the Daily News and Ms. Blackburn published a false, misleading and defamatory story titled "Judge taking heat from victim advocates — man who confessed to murder of Laquina was earlier released without bail in assault case." Plaintiff claims that Ms. Blackburn's story published April 16, 2007 is defamatory in that the combination of the head-line and article suggested explicitly and via innuendo to the public that Plaintiff:

1. somehow was to blame for the murder due to his bias, lack of qualification and failure to follow the law;

2. had improperly failed to set bail in accordance with the Bail Reform Act in the matter before him involving the accused murderer, Defendant Daniel Castillo, in a case against Defendant Castillo which was limited to a misdemeanor domestic assault charge in connection with which Plaintiff had in fact set bail which included release on personal recognizance with conditions:

266

3. the article stated to readers without equivocation that Plaintiff's bail decision in Defendant Castillo's case had actually given Defendant Castillo the "opportunity to murder 12 year old Laquina Hennis." as though this had been an intended or contemplated consideration in the bail decision made in Defendant Castillo's assault ease; and

4. the article stated that Plaintiff had improperly released Defendant Castillo "despite a history of violence." And that any statement or innuendo that Plaintiff had released Castillo despite his history of violence was false and known to be false.

(Amended Complaint at 9-11).

Plaintiff further alleges that Defendants continued their false and defamatory media campaign against him. He alleges that the article titled "Protesters Call for Judge Kendall to Step Down" and sidebar "Kendall Has Come Under Attack Throughout His Term on Bench" authored by Ms. Blackburn were defamatory in that they:

i. Repeated the falsehood that Judge Kendall had released Defendant Castillo despite a "history of violence" again suggesting and implying that Defendant Castillo had a long criminal record and that Judge Kendall had improperly ignored it in setting bail in Defendant Castillo's misdemeanor domestic assault case when in fact Judge Kendall had followed the Bail Reform Act and Defendant Castillo did not have a long criminal record;

ii. Compounded their misreporting in this regard by also publishing the falsehood that the time Judge Kendall set bail for him. Defendant Castillo aced pending felony charges when in fact he faced only misdemeanor charges;

iii. Repeated the falsehood that Judge Kendall's bias, lack of qualification and unwillingness to follow the flaw had caused or contributed to the murder of Laquina Hennis;

iv. Repeated the falsehood that Judge Kendall's decisions exhibited a pattern of dangerous leniency and a disregard for community safety.

(Amended Complaint at 13-15).

In Plaintiff's opposition to the motion for judgment as a matter of law, he argues that at trial evidence was presented that The Daily News

published an article written by Ms. Blackburn, which informed the public in the sub-headline: "Despite history of violence, Castillo was released on recognizance in March after arrest on assault charges." The fourth paragraph of the article stated, "He was arrested in connection with that attack on March 1. The next day, Kendall found probable cause to charge Castillo but released him pending trial — despite Castillo's history of violence including charges of rape, assault and weapons violations." (Plaintiff's Ex. 7). Plaintiff additionally, argues that he presented evidence that The Daily News drove home its defamatory message in an article on April 16, 2001 written by Ms. Blackburn, in which Ms. Blackburn characterized Judge Kendall's release of Castillo with the words "thus giving him the opportunity to murder Laquina Hennis, which Castillo confessed he did." (Plaintiff's Ex. 8).

Additionally, Plaintiff points to the Daily News article dated April 24, 2007 (Plaintiff's Ex. 13), quoting a street protestor who said "That little girl died because of Judge Kendall's mistake." Pl. Opp. at 5. He also points to, among other witnesses at trial. Defense witnesses Lynn Spencer and Maria Ferraras, who he alleges confirmed that the community understood that Judge Kendall had released Castillo on March 2, 2007 despite knowing his history of violence, and, thus, giving him the "opportunity to murder" Laquina Hennis. *Id.* He asserts that Juel Molloy and Cheryl Penn both described how people in the community demonized Judge Kendall for what they believed he had done in the Castillo case. *Id.* He further points to testimony from Cheryl Penn that copies of The Daily News flew off the news rack on the days that The Daily News published stories about Judge Kendall's release of Castillo, and that she actually ran out of papers by 9 o'clock in the morning. *Id.* He asserts that she described her customers' reactions of outrage against Judge Kendall when they read those stories. *Id.* Assuming all the evidence to be true, it does not amount to the requisite proof necessary for Judge Kendall to succeed.

■ Initially, the Court finds that the trial record amply supports the conclusion that the articles on their face are materially true. Moreover, the evidence shows that the articles fairly and accurately report on Daniel Castillo's advise-of-rights hearing before Judge Hollar for the second-degree murder charge in the killing of Laquina Hennis, and are thus privileged. The evidence sufficiently establishes that the facts reported are based on available court documents of public record that had been thoroughly reviewed by Ms. Blackburn prior to writing her accounts.

■ The Court also finds, as it must, that the characterization of Castillo's criminal record as "history of violence" is a constitutionally protected opinion. *See Redco Corp. v. CBS*, 758 F.2d 970, 972 (3d Cir. 1985). At trial, it is uncontroverted, that Plaintiff testified that whether someone has a "history of violence" is an "opinion." Clearly, Plaintiff opines that Daniel Castillo did not, at the time of the proceeding before him when he found probable cause, have a "history of violence." Quite tellingly, Ms. Blackburn and Mr. Tsidulko's accounts on April 14th and April 20th respectively, report — relying upon court documents from the March 1 arrest — that he (Daniel Castillo) was accused of beating his ex-girlfriend in the head in front of his young son. Both report that Judge Kendall released Castillo on his own recognizance. They also, in an obvious attempt to qualify and support the statement of Castillo's history of violence, go on to disclose facts establishing Castillo's prior criminal record. Namely, reporting on Castillo's 2004 charges wherein he was accused of repeatedly raping a mentally challenged woman at gunpoint. They report that court documents indicate that Castillo had accepted a plea deal. Their stories explain that the V.I. Attorney General's Office dropped 10 charges against Castillo — including first-degree rape, first-degree assault, robbery, burglary and weapons charges — in return for Castillo pleading guilty to a third-degree assault charge. Pointedly, Ms. Blackburn in her April 14th story further elaborates that "Frazer [Attorney General] said Friday that witness problems in that case led prosecutors to conclude that third-degree assault was the only charge they could prove in court." Pl. Ex. 7. Thus, Defendant's opinion is supported by the underlying facts.

■ Moreover, the Court finds that the language reporting that Judge Kendall had released Defendant Castillo **"despite a history of violence"** is also constitutionally protected opinion. Judge Kendall asserts that the language suggests and implies that Defendant Castillo had a long criminal record and that Judge Kendall had improperly ignored it in setting bail in Defendant Castillo's misdemeanor domestic assault. Plaintiff's construction that the language infers to the reader that Judge Kendall knew about Castillo's prior criminal record [when he in fact did not know at the time] but failed to properly consider it at the misdemeanor domestic assault hearing is not reasonable. However, even considering arguendo that it is, the implication that Judge Kendall knew the criminal

269

background but failed to properly consider it would still be constitutionally protected opinion.

Notably, although both articles go to great lengths to disclose the underlying facts supporting Castillo's prior criminal record, it is evident that *neither* of the articles report that Castillo's history of violence was ever "presented or argued" to Plaintiff at Castillo's advise of rights hearing on the domestic violence charges. Nor does the evidence at trial remotely support a finding that the articles purport to so do. The Court, thus, finds Plaintiff's construction that it does, unreasonable.

In fact, Ms. Blackburn's April 14th article "Police say Castillo confessed to killing Laquina", summarizes the gist of the article in the opening statement: "Daniel Castillo, who police say has confessed to killing 12-year old Laquina Hennis, has faced violent crime charges in the past but has served little jail time." Pl. Ex. 7. Ms. Blackburn, before reporting in further detail on Castillo's prior criminal record, prefaces the objective in doing so: "Castillo has a reputation for violence and for plea bargaining for reduced jail time." *Id.* Mr. Tsidulko's April 20th article, likewise, relates the same message.

█ █ Furthermore, to the extent that plaintiff claims that Ms. Blackburn's reporting implied that he was to blame for Laquina Hennis' murder, that implication is also opinion protected by the First Amendment. *See Jenkins v. KYW*, 829 F.2d 403, 404, 407 (3d Cir. 1987). Instructively, in *Jenkins*, the Third Circuit clearly decided that the inference alleged by Plaintiff was not reasonable, and, therefore, found that there were no material facts in controversy on Plaintiff's allegations that the broadcast was defamatory. In *Jenkins*, the Third Circuit reasoned in concluding that statements regarding sentencings are protected expressions of opinion:

> a judge's determination to sentence at the lower end of the range is no violation of one's official duty, nor is the opposite determination. It is precisely because a range of sentencing is possible that Mr. Rendell's opinions on the subject are merely opinions. As the district court noted also, all the judges who handled Mr. Hewlett's sentencings were the subjects of Mr. Rendell's statements.

*Id.* at 409.

█ Finally, and most fatally Plaintiff failed to establish by clear and convincing evidence that Ms. Blackburn published the challenged

statements with actual malice and failed to prove that she intended to convey the implication that Plaintiff claims defamed him. Plaintiff presented no evidence at trial sufficient to meet his constitutional burden.

Judge Kendall argues that at trial he presented extraordinary evidence of actual malice on the part of Ms. Blackburn, that is, actual knowledge of falsity or reckless disregard of falsity, In support, Judge Kendall contends that the truth of what occurred at the bail hearing was undisputed at trial. He surmises that the evidence at trial demonstrated that Ms. Blackburn simply fabricated the events of the March 2, 2007 bail hearing. He emphasizes that nothing in the records reviewed told Ms. Blackburn that Judge Kendall had released Castillo on March 2, 2007 despite a history of violence. Plaintiff also asserts that testimony that Ms. Blackburn had reviewed the rap sheet that was presented to Judge Kendall on March 2, 2007, which showed "no disposition" to mean that it showed "no history of violence." To the contrary, substantial evidence supports that Ms. Blackburn did review the rap sheet as indicated above, which showed that Castillo had been charged with first-degree rape in 2004 and that there was "no known disposition" for that charge. Pl. Ex. 41. She also reviewed the court file from the rape case, which showed the disposition — Castillo pleaded guilty to assault. Def. Exs. 88-93. As pointed out above, in her articles following Castillo's arrest for murdering Laquina Hennis, Ms. Blackburn reported on Castillo's guilty plea in the rape case, as well as the outcome of each of his other criminal cases. It is significant, however, that Ms. Blackburn never wrote that any of this information "was presented to Judge Kendall." Moreover, the Court is not persuaded that the mere fact that Ms. Blackburn reviewed a rap sheet stating that there was "no known disposition" to a rape charge amounts to a showing of clear and convincing evidence that Ms. Blackburn knew that Judge Kendall was not presented with the actual disposition of that case at the advise-of-rights hearing. Plaintiff, finally, emphasizes the importance of question marks on Ms. Blackburn's copy of Castillo's rap sheet (the April 13, 2007 version) (Pl. Ex. 42). Plaintiff also points out that Ms. Blackburn put a notation "Concrete" in her notes about Castillo's criminal history as presented to Judge Kendall at Castillo's bail hearing. (Pl. Exs. 81 & 82). Plaintiff's arguments, however, entirely distort the relevant facts and legal issues pertinent to his burden of proof.

Plaintiff would rather self-servingly have this Court categorically ignore the relevant context of the articles he relies upon as basis for his

complaint and presented at trial in support of his libel action against Ms. Blackburn. Moreover, this Court finds that Plaintiff's smoking gun arguments relating to the notations on Ms. Blackburn's notes are not reasonable implications supportable by the evidenced adduced at trial, and as such are not indicative of the requisite clear and convincing evidence critical for a finding of actual malice.

Moreover, the evidence referenced in the Plaintiff's opposition is not legally sufficient to meet plaintiff's constitutional burden of proving malice by clear and convincing evidence. *See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 685, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) ("the question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law.") Significantly, the Court finds that the standards as articulated in *Bose Corp. v. Consumers Union*, 466 U.S. 485, 501, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984) (holding whether a plaintiff has met his burden of proving actual malice is clear and convincing on a motion for directed verdict) has not been met. Indeed, all of the evidence of record established that Ms. Blackburn reviewed the court records from Castillo's criminal cases and reported what was in those records — as had Mr. Tsidulko. Thus, judgment should be entered in Ms. Blackburn's favor as a matter of law.

### 2. The Ashley Williams Statement

In his complaint, Plaintiff alleges that on November 21, 2006, the Daily News published a false, misleading and defamatory story titled "Convict who judge freed for weekend in standoff with police." Judge Kendall alleges that the story is defamatory in that the article falsely states that Judge Kendall allowed Ashley Williams "to spend the weekend in the community unsupervised before he was supposed to report to jail Monday" whereas in fact Williams was under house arrest and was only permitted to go home in order to get his affairs in order.

 To begin the evidence shows that the reporting was substantially true. The evidence at trial is uncontroverted on the fact that Mr. Williams was at home unsupervised when he started the five-hour standoff with police. The evidence at trial unequivocally established that Williams was not remanded into custody after his rape conviction for raping and sodomizing a homeless man and, pursuant to Judge Kendall's instructions, was permitted to go to his home, which was indisputably in

272

the community. Moreover, at trial plaintiff himself admitted that no one was supervising Williams at the time of the standoff. The Court finds the fact that Ms. Blackburn "conceded at trial that the prosecutors did not tell her that Williams was released into the community unsupervised" irrelevant, where Ms. Blackburn testifies that the prosecutors had told her that Williams was released into the community, which she reported two days before the standoff. Def. Ex. 203, and she testified that she knew firsthand from being at the standoff that Williams was not supervised. Therefore, Plaintiff failed to meet his constitutional burden of proving that Ms. Blackburn's report was materially false. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 770, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986).

 The challenged statement is also protected by the fair report privilege. *See Medico v. Time, Inc.*, 643 F.2d 134, 137 (3d Cir. 1981). Moreover, although Plaintiff testified that Williams was released under "house arrest," the specific terms of Williams' release are immaterial, as it is undisputed that Plaintiff's decision to release a convicted rapist, despite a prosecutor's warning that he had said he would "prefer to die than go to jail." resulted in the standoff. Judge Kendall admits at trial that the disastrous results of that decision prompted him to apologize to public safety personnel in person the night of the standoff and to the community the following morning on Sam Topp's radio show. "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991).

Finally, Judge Kendall failed to establish, by the requisite clear and convincing evidence, that Ms. Blackburn published the challenged statement about Williams' release with actual malice; that is, that she either knew that the statement was false or published it with a high degree of awareness that it was probably false. In fact, there is not sufficient evidence in the record from which a jury could legally find actual malice. To the contrary, as pointed to by Defendants, the uncontradicted evidence showed that (1) Ms. Blackburn had two source for her reporting — the Attorney General and an Assistant Attorney General; (2) after she first reported on Williams' release "in the community" (two days before the standoff), no one told her that anything in the report was inaccurate, *see* Def. Ex. 203; (3) Ms. Blackburn believed her reporting to be true; and (4) after her report on the standoff, Judge Kendall did not tell Ms. Blackburn

that anything in the article was false, even though he talked to her at length the very next day. Based on the record at trial, the Court finds that Plaintiff failed to meet his constitutional burden of proving actual malice as a matter of law, and, thus, there is no basis for a reasonable jury to find against Ms. Blackburn on this claim.

### 3. The Paul Mills Statement

In Count IV of his complaint, Plaintiff asserts general allegations that include The Daily News articles published on June 1, 2007. Plaintiff alleges that the article "Man Release Without Bail by Kendall Fails to Appear in Court." authored by Ms. Blackburn, is defamatory because the article's headline stated that Judge Kendall released Mills "without bail." Pl. Ex. 18. In support, Plaintiff contends that the headline falsely suggested that he failed to comply with the Federal Bail Reform Act because Mills' release on personal recognizance was a form of bail. The Court finds that Plaintiff's interpretation is not reasonable. At trial the evidence indisputably showed that even Plaintiff's own witnesses. Ms. Valerie Kendall and former Attorney General Iver Sridiron, testified that "bail" is commonly understood to mean money bail and is not commonly understood to include personal recognizance. This point of view was affirmed by the former Presiding Judge Verne Hodge. This is especially the case, when the statement is taken in context with the entire article, as it must. As demonstrated by the fact that the article reports in the very first sentence that Mills was "released on his own recognizance" and in the eight paragraph explains in detail that "Kendall released Mills on his own recognizance, pending trial, with a number of enumerated conditions, including, specifically, that he not violate any laws. Pl. Ex. 18; see, e.g., Skeoch v. Ottley, 377 F.2d 804, 809, 6 V.I. 241 (3d Cir. 1967) (instructing that the whole item, including display line, should be read and construed together) (citation omitted). The Court thus, finds that the article contrary to Plaintiff's assertions does not reasonably convey the defamatory meaning ascribed to it by Plaintiff, and is also protected by the fair report privilege. Moreover, the trial record is devoid of any evidence that Ms. Blackburn who did not write the headline could be found to have acted with actual malice. Nor does Plaintiff produce any evidence to show that the unidentified author wrote the headline knowing it was false, entertaining serious doubts as to its truth, or intending to convey the implication Plaintiff ascribes to it. Therefore, Plaintiff has clearly failed to meet his burden of proof on this claim.

274

For the foregoing reasons, and based upon controlling law, judgment must be entered as a matter of law in favor of Ms. Blackburn and against Judge Kendall on all claims filed against her.

## B. Defendant The Daily News

The Daily News argues that judgment cannot be entered against it as a matter of law based on any of the articles written by Ms. Blackburn or those written by Mr. Tsidulko, and for the reasons set forth above, this Court agrees.

Plaintiff additionally filed suit against The Daily News based on three publications that were not written by either Ms. Blackburn or Ms. Tsidulko. Those publications are (1) an editorial calling on plaintiff to resign (Pl. Ex. 9), (2) an article reporting on Plaintiff's bail decision in the Alric Simmonds' case (Pl. Ex. 19), and (3) an article reporting on Plaintiff's retirement (Pl. Ex. 20).

### 1. Statements in The April Editorial "Judge Kendall Should Resign"

Plaintiff alleges in Count III of his complaint that on April 17, 2007, The Daily News published the Editorial "Judge Kendall Should Resign." Pl. Ex. 9. Plaintiff asserts therein that although the piece was physically published as an "Editorial" in the "Opinion" section of the newspaper, the story itself purported to be factual and contained disclosed false and defamatory statements of alleged facts. He further elaborates that the false statements were made in the context of the highly charged atmosphere existing in St. Thomas at the time, only heightened the devastating impact upon him.

Plaintiff summarizing his evidence at trial argues that the editorial contains numerous statements that are either factual, or rely on undisclosed facts, including the devastating claim that Judge Kendall showed "bias" in certain classes of cases, especially involving domestic violence, by "routinely eliminating bail for men, even repeat offenders, who are charged with especially violent crimes including sexual abuse crimes." Pl. Ex. 9.

The Court disagrees and finds that the editorial statements asserting that Judge Kendall showed "bias" in certain cases, especially involving domestic violence, by "routinely eliminating bail for men, even repeat offenders, who are charged with especially violent crimes

including sexual abuse crimes" are constitutionally protected opinion. *See, e.g., Rappaport v. VV Publ'g Corp.*, 223 A.D.2d 515, 637 N.Y.S.2d 109, 110 (N.Y. App. Div. 1996) (statements that judge was "biased" and "too lenient in imposing sentences" are opinion). Moreover, the Court agrees and, thus, also finds that the evidence sufficiently supports a finding that the statements are reasonably supported by disclosed facts. Specifically, as pointed out by the Daily News, the editorial itself refers to plaintiff's decisions in the Castillo and Williams cases, comments Judge Kendall made in 2003 explaining his philosophy on bail, and his decisions that year "allowing there men charged in separate domestic violence cases to be released without bail." In support, the Daily News cites to *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972-73 (3d Cir. 1985), holding that there is no claim where "issues discussed in the broadcast were matters of public concern. the facts disclosed were true and the program adequately disclosed the basis for the opinion expressed."

As proof of its claim, Plaintiff contends that Daily News admitted that it knew of no basis for these statements. Indeed, its "cops and courts" reporter Joseph Tsidulko even admitted on the witness stand that he did not believe Judge Kendall to show bias. The deposition testimony of J. Lowe Davis, The Daily News' editor and corporate designee under Rule 30(b)(6), denied having any information about the basis for the statements in Plaintiffs Ex. 9. She also denied that either she, Ms. Blackburn or Mr. Tsidulko even read the Editorial, Plaintiffs exhibit 9. Pl. Opp. 12. In sum, Plaintiff argues that testimony from the Daily News' City Editor. Bill Brown and Ariel Melchior, sufficiently discredits Ms. Davis' testimony and, therefore, the jury could disbelieve Ms. Davis' denials and conclude she wrote the editorial and accept her statements on behalf of the Daily News that she had "no idea" of any basis for what was written. Pl. Opp. 12. The Court, disagrees, and finds Plaintiff's evidence to be based purely on speculation and conjecture. On this issue, the evidence solely points to the reasonable conclusion that it was most probably Edwin Crouch who prepared the editorial. Hence, since the Plaintiff has failed to present any evidence as to what Mr. Crouch thought at the time he authored the editorial or whether he actually doubled the truth of what he wrote, the Plaintiff cannot support his burden of proof on this claim.

### 2. The Alric Simmonds' Statement

In Count IV of his complaint, Plaintiff alleges the article that published by The Daily News on June 15, 2007 entitled "Kendall

276

Releases Simmonds on Bail, Overruling Hollar." was defamatory in that it repeated the falsehood that Judge Kendall was releasing defendants without bail when he set bail at personal recognizance with conditions in accordance with the Bail Reform Act. (Amended Compl. at 14). The Daily News argues that given Plaintiff's admission at trial that Judge Hollar had set monetary bail in the Simmonds case and acknowledged that he later released Simmonds on personal recognizance, the testimony concerning the common understanding of "bail", and the undisputed record in the Simmonds case, *see* Pl. Ex. 50 at 6-8 (Plaintiff's opinion in Simmonds case describing the bail ruling in the case), the headline's statement that Plaintiff "release[d] Simmonds with no bail, overruling Hollar" is a fair and substantially accurate report. The Court agrees, and finds that when viewed in the context of the entire article, the evidence adduced at trial does not support the conclusion that the headline conveyed the defamatory meaning Plaintiff ascribes, nor is it materially false and is plainly protected by the fair report privilege. Moreover, Plaintiff failed to present any evidence whatsoever to support the requisite showing that the article was published with actual malice. Hence, the Court finds that the Plaintiff failed to meet his burden on proof on this claim.

### 3. Statements on Judge Kendall's Retirement

In Count VIII of his complaint, Plaintiff alleges that on February 18, 2009, the Daily News published a false, misleading and defamatory story titled "Kendall Chooses to Retire When Term Ends; Three Judicial Conduct Complaints Against Him Still Pending." (Amended Compl. at 18). Plaintiff further asserts therein that the story is defamatory in that

i. It falsely states that "Three judicial conduct complaints against him [are] still pending" when in fact those complaints are not still pending, and the Virgin Islands Commission on Judicial Disabilities has been enjoined from pursuing those complaints and has been effectively dissolved by order of the United States District Court for the District of the Virgin Islands.

ii. The combination of the headline and the sub-headline falsely suggest that Judge Kendall decided to retire because of the three complaints, or otherwise that there is a connection between the complaints and Judge Kendall's decision to retire,

277

whereas in fact there is no relationship, and the complaints are not still pending.

*Id.*

To begin, contrary to Plaintiff's allegations, the evidence at trial substantially supports that the retirement article's sub-headline is not materially false and does not reasonably convey the defamatory meaning Plaintiff ascribes to it. Specifically, the evidence established indisputably that the sub-headline's statement that "three judicial conduct complaints against [Plaintiff were] still pending" at the time, was true. This is especially so, when it is read in the context of the full article, as it must, which plainly explained that Judge Gomez had enjoined the Commission on Judicial Disabilities from proceeding and that [Judge Gomez'] decision had been appealed. Pl. Ex. 20. The Daily News points to evidence at trial that after the Commission appealed the district court's injunction, Plaintiff in formed a fellow judge that he was "currently the subject of removal proceedings based upon two (2) complaints filed with the V.I. Judicial Disabilities Commission" and stressed that "the appeal itself suggests that the attempt to remove me has not ceased." Def. Ex. 247. The Daily News further points out that at trial Plaintiff also admitted that he had signed a sworn interrogatory response stating that "although the Virgin Islands commission on Judicial Disabilities has been enjoined from pursuing removal proceedings, the injunction has been appealed and the ultimate resolution of the appeal is presently unknown." Most importantly, the trial record is entirely devoid of any evidence of actual malice that would support that the article was cither authored by someone who knew the statements to be false or who actually doubted their truth and published it anyway; or that they knew of the alleged implications or intended the implications. Therefore, the Court finds that Plaintiff failed to meet his burden of proof on this claim.

For the foregoing reasons, and chiefly because the evidence presented by Plaintiff to show actual malice lacks the convincing clarity which the constitutional standard demands, judgment must be entered as a matter of law in favor of The Daily News and against Judge Kendall.

## III. CONCLUSION

The Court having considered all of the evidence in the light most favorable to Plaintiff, including all reasonable inferences, finds that in

278

applying the requisite constitutional standard Plaintiff has failed to present sufficient evidence by which a reasonable jury would have a legally sufficient evidentiary basis to find for the Plaintiff. Accordingly. Defendants' Motion Verdict shall be granted, and judgment for Defendants The Daily News and Ms. Blackburn and against Plaintiff Judge Kendall shall be entered as a matter of law.